EL PUEBLO DE PUERTO RICO, querellante, *v.* HARRY E. HENNEMAN, ETC., Fiduciarios (*Trustees*) de EASTERN SUGAR ASSOCIATES, EASTERN SUGAR ASSOCIATES, un Fideicomiso (*Trust*) y LEONCIO VELÁZQUEZ RODRÍGUEZ, ETC., querellados.

Núm. 11.—*Sometido:* Diciembre 7, 1942. *Resuelto:* Diciembre 23, 1942.

*E. T. Fiddler, H. S. McConnell* y *José G. González,* abogados de los peticionarios; *Hon. Procurador General Interino M. Rodríguez Ramos* y *Miguel Guerra-Mondragón, Rafael Rivera Zayas, Luis Venegas Cortés* y *Nilita Vientós,* abogados especiales los últimos, abogados de El Pueblo.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Esta es una petición para que se traslade una querella de la naturaleza de *quo warranto* de esta corte a la Corte de Distrito de los Estados Unidos, para Puerto Rico. La querella alega dominio y control de tierras en violación de ciertas leyes insulares y federales. A petición de los allí demandados, un procedimiento similar al presente caso fué trasladado, debido a diversidad de ciudadanía, a la referida Corte Federal por orden de este tribunal. (60 D.P.R. 59). Posteriormente dicho procedimiento fué desistido voluntariamente por el querellante ante la Corte Federal, y más luego el presente recurso fué entablado ante esta corte.

Solamente hay una diferencia entre este recurso y el anterior que nos concierne en esta petición, o sea, que aquí se han incluído como partes demandadas a los arrendadores de terreno a uno de los demandados, Eastern Sugar Associates, a pesar de que ellos no fueron incluídos en el primer

procedimiento. Por tanto, la única cuestión nueva presentada por esta petición de traslado, es si el hecho de que se incluyeran tales arrendadores, que son residentes de y domiciliados en Puerto Rico, evita el traslado en este caso. Los peticionarios alegan que no lo evita por los fundamentos (*a*) que los arrendadores no son partes indispensables en este caso, y (*b*) que los arrendadores fueron incluídos fraudulentamente como demandados con el fin de evitar el traslado.

■ Nos confrontamos primeramente en este procedimiento con la contención de los peticionarios al efecto de que nuestra función en este caso se limita a determinar si los requisitos formales para tal petición señalados en el Título 28 U.S.C.A., Sección 72, han sido cumplidos y de que por lo tanto no tenemos poder para considerar la cuestión de si los arrendadores son partes indispensables en este caso. Por tanto, examinamos primeramente esta contención.

Convenimos con la manifestación hecha por los peticionarios en su alegato al efecto de que el procedimiento a seguirse en una petición de traslado se establece en *Houlton Sav. Bank* v. *American Laundry Machinery Co.*, 7 F. Supp. 858 a las págs. 860, 61, como sigue:

"...Cuando se radica una petición de traslado, la única cuestión que la corte estatal debe decidir, es si, admitiendo la veracidad de los hechos relacionados en la petición, aparece de la faz del récord que el peticionario tiene derecho al traslado...

"El Tribunal Supremo en el caso de *Burlington, etc., R., Co.* v. *Dunn*, 122 U. S. 513,...dijo: 'Todas las cuestiones de hecho alegadas por la petición de traslado deben ser resueltas en la Corte de Circuito (ahora de distrito), pero la corte estatal está en libertad de determinar por sí misma si, a base del récord, se ha efectuado un traslado ...*Se presenta en tal virtud a la corte estatal estrictamente una cuestión de derecho; esto es, que si se admite la veracidad de los hechos alegados en la petición de traslado, aparece de la faz del récord...que el peticionario tiene derecho al traslado del pleito...* Pero, aun cuando la corte estatal rehusara paralizar los procedimientos, el peticionario puede radicar en la Corte de Circuito

[de distrito] una copia del récord ante dicha corte estatal, tal como se encontraba al radicarse la petición, y hacer que el caso sea radicado en dicha Corte de Circuito.' '' (Bastardillas nuestras).

Pero nada hay en dicho caso, así como tampoco en el de *Ches. & Ohio Ry. Co.* v. *Cockrell*, 232 U. S. 146, citado también por los peticionarios en cuanto a este punto, que nos impida considerar como ciertos todos los hechos alegados en la petición y luego entrar a considerar y decidir las limitadas cuestiones de derecho suscitadas por esta petición con el fin de determinar si tal petición debe concederse. Al contrario, es nuestra opinión que éstos así como otros casos que más adelante se indicarán establecen no solamente nuestro derecho si que también nuestro deber a examinar esas cuestiones.

En *Chicago R. I. & Pac. Ry.* v. *Dowell*, 229 U. S. 102, se radicó una demanda contra una compañía ferroviaria y contra un maquinista por daños debido a lesiones recibidas a causa de alegada negligencia de parte de la compañía ferroviaria y del maquinista. La compañía ferroviaria demandada, tratando de que se trasladara el caso debido a una alegada diversidad de ciudadanía entre ella y el demandante, alegó una controversia separable. La corte estatal denegó la petición. Al confirmar tal sentencia la Corte Suprema de los Estados Unidos dijo a la página 113 que ''La cuestión de si había o no responsabilidad conjunta era una a ser determinada basándose en las alegaciones del demandante al relacionar su causa de acción, y es una cuestión a decidir por la corte estatal.''

En *Illinois Central R. R. Co.* v. *Sheegog*, 215 U. S. 308, el demandante radicó una acción por la muerte de un familiar que murió intestado, un maquinista empleado por una compañía ferroviaria, alegando que las condiciones de los cimientos y de la vía eran inadecuadas. El demandante incluyó como demandadas a la compañía B, que explotaba el ferrocarril, y a la compañía A, arrendadora de las propiedades del ferrocarril a la compañía B. La corte estatal denegó la

petición de traslado radicada por la compañía B, alegando que había diversidad de ciudadanía. La Corte Suprema de los Estados Unidos confirmó la sentencia en una opinión emitida por el Juez Asociado Sr. Holmes en la cual dijo a a las págs. 317, 18:

"...la cuestión de si una obligación conjunta del arrendador y del arrendatario resultaría de los actos y omisiones de la Illinois Central Railroad Company solamente, era una relativa al estatuto de Kentucky a ser resuelta por ella [la corte estatal], y nos parece que la ha resuelto.

"* 　 * 　 * 　 * 　 * 　 * 　 *

"...cualquiera que sea la pauta precisa seguida por dicha corte de ahora en adelante, queda decidido que en Kentucky los hechos alegados y probados contra la Illinois Central Railroad Company en este caso hicieron a su arrendador responsable conjuntamente como cuestión de ley. Estamos obligados a respetar esta decisión."

En *Morgan* v. *Kroger Grocery & Baking Co.*, 96 F. (2d) 470, (C.C.A. 8th Cir., 1938) la demandante instituyó una acción personal de daños en una corte estatal contra la ciudad de St. Louis y la corporación demandada. Esta última solicitó traslado a la Corte de Distrito de los Estados Unidos, alegando la existencia de una controversia separable en cuanto a ella. La corte estatal negó el traslado, y entonces la corporación demandada radicó el caso en la Corte Federal, y dicha corte concedió un *injunction* contra la demandante, prohibiendo a ésta proseguir la acción en la corte estatal. La Corte de Circuito de Apelaciones revocó a la Corte de Distrito de los Estados Unidos, ordenándole que devolviese el caso a la corte estatal. La Corte de Circuito dijo, a las págs. 472, 73:

"...Sin embargo, la corte estatal no está obligada a renunciar su jurisdicción a menos que la petición de traslado demuestre que la causa es una susceptible de traslado. *Stone* v. *South Carolina*, 117 U. S. 430, 6 S. Ct. 799, 29 L. Ed. 962; *Carson* v. *Hyatt*, 118 U. S. 279, 6 S. Ct. 1050, 30 L. Ed. 167; *Madisonville Traction Co.* v. *Mining Co.*, 196 U. S. 239, 25 S. Ct. 251, 49 L. Ed. 462; *Chesapeake & O. Ry. Co.* v. *Cockrell*, 232 U. S. 146, 34 S. Ct. 278, 58 L. Ed.

544; *Illinois C. R. Co.* v. *Sheegog*, 215 U. S. 308, 30 S. Ct. 101, 54 L. Ed. 208; *Gulf Refining Co.* v. *Morgan*, 4 Cir., 61 F. 2d 80; *Moulton* v. *National Farmers' Bank*, D. C., 27 F. 2d 403. Si del récord no surge prima facie un caso de traslado, la corte estatal puede negar el traslado. *Cuando la petición de traslado presenta solamente una cuestión de derecho, la corte estatal puede actuar en relación con ella, pero si presenta cualquier cuestión de hecho, ésta debe ser determinada por la corte federal mediante una moción para que se devuelva el caso. Farmers' Bank & Trust Co.* v. *Atchison, T. & S. F. Ry. Co.*, 8 Cir., 25 F. 2d 23; *Boyle* v. *Chicago, R. I. & P. Ry. Co.*, 8 Cir., 42 F. 2d 633.'' (Bastardillas nuestras).

Véanse también *Lake* v. *Texas News Co.*, 51 F. (2d) 862; *Hoffman* v. *Metz*, 31 F. Supp. 204, 206 (1940).

Las cortes estatales han decidido en igual forma. *State* v. *Mosman*, 133 S. W. 38 (Mo. 1910); *Goodman* v. *Grace Iron & Steel Corporation*, 13 ·A. (2d) 228 (N. J. 1940); *Miles* v. *Layton*, 193 A. 567 (Del. 1937).

██ Por lo tanto, procedemos a considerar como una cuestión de derecho esta petición de traslado en donde ''solamente deben considerarse las partes indispensables .... todas las demás pueden ser .... descartadas, si su comparecencia excluye o limita el derecho ...'' al traslado. (*Fienup* v. *Kleinman*, 5 F. (2d) 137, 40 (C.C.A. 8th Cir., 1925)). Las partes en el presente caso están de acuerdo en afirmar que el caso de *Fienup* define correctamente una parte indispensable a la página 140 como sigue:

''Una parte indispensable es aquella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un décreto final entre las otras partes en la acción, sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia...''

*New Jersey Central Railroad Co.* v. *Mills*, 113 U. S. 249, *Egyptian Novaculite Co.* v. *Stevenson*, 8 F. (2d) 576 (C.C.A. 8th Cir., 1925), *Iberia Petroleum Corporation* v. *Acadian Production Corp.*, 34 F. Supp. 995 (1940), *Murphy* v. *Johnson*, 49 F. (2d) 410 (1931), *Sharpe* v. *Landowners Oil Ass'n.*, 92

S. W. (2d) 435 (Tex. 1936), y *De Grazier* v. *Panell Oil Corporation,* 109 S. W. (2) 1109 (Tex. 1937) son ejemplos del sinnúmero de casos que aplican la regla (*test*) establecida en el caso de *Fienup.*

Véanse también las secciones 63 y 66 del Código de Enjuiciamiento Civil de Puerto Rico, en comparación con las Reglas 19 y 20 de las Reglas de Enjuiciamiento Civil Federales; *Ramis et al.* v. *Prats et al.,* 32 D.P.R. 882; *Carlo* v. *Ferrer et al.,* 27 D.P.R. 216, 227. *Cf. Pueblo* v. *Plata Sugar Co.,* 58 D.P.R. 912; *Pueblo* v. *The Fajardo Sugar Company of P. R.,* 51 D.P.R. 876.

En el presente caso, los peticionarios resumen su contención de que los arrendadores no son partes indispensables en esta acción, como sigue: "La única cosa que hicieron los arrendadores fué contratar· con estos peticionarios. En cuanto a ellos la única cuestión que caba (*sic*) es si contrataron con personas que tenían capacidad para contratar o no. No tienen nada que ver con las circunstancias que determinan si esa falta de capacidad existe o no. Puede ser que ellos tengan interés indirecto en el resultado del procedimiento; pero esto no los hace partes indispensables a la controversia entre El Pueblo y estos peticionarios."

No es necesario que determinemos si esta contención de los peticionarios prevalecería si la presente fuera una acción corriente de *quo warranto* y nada más—si, por ejemplo, ésta fuera una acción de *quo warranto* para disolver una corporación organizada con el fin de manufacturar ropa que había arrendado y que estaba explotando una cantera.

Pero aquí, además de las sanciones negativas y prohibitorias dispuestas para casos semejantes al ejemplo mencionado, la sección 1 de la Ley núm. 47, Leyes de Puerto Rico de 1935, (Sesión Extraordinaria, pág. 531) prescribe, para casos de la clase del que nos ocupa, la disposición afirmativa de que "Cuando cualquier corporación...esté poseyendo ilegalmente, *por cualquier título* bienes inmuebles en Puerto Rico, El Pueblo de Puerto Rico podrá, a su opción, *dentro*

*del propio procedimiento,* instar la confiscación de dichos bienes, a su favor, o su enajenación en subasta pública dentro de un término no mayor de seis meses..." (Bastardillas nuestras).

La sección 2 de la Ley núm. 47, tal como fué enmendada por la Ley núm. 183, Leyes de Puerto Rico, 1941 ((1) pág. 1383), dispone que la sentencia en un caso de esa naturaleza deberá decretar "la nulidad de todos los actos y contratos realizados por la corporación o entidad demandada, y se decretará, además, la cancelación de los asientos o inscripciones que los mismos hayan producido en los registros públicos de Puerto Rico, y cuando el decreto de nulidad *afecte a bienes inmuebles* y El Pueblo de Puerto Rico hubiere optado por su confiscación, o se ordenare la venta en pública subasta, *la sentencia final fijará el precio razonable* que deba pagarse por los mismos." (Bastardillas nuestras).

Las secciones 57, 58 y 59 de la Ley de Tierras de Puerto Rico (Ley Núm. 26, Leyes de Puerto Rico, 1941 (1) pág. 389) también han sido invocadas para sostener la presente acción en sus méritos. Y la sección 23 de dicha Ley de Tierras confiere a la Autoridad de Tierras ciertos derechos y autoridad en relación con la mencionada opción de El Pueblo sobre tierras poseídas ilegalmente.

Es evidente que, al implementar con sanciones la Ley del Congreso que prohibe tenencias de tierra en exceso de 500 acres (31 Stat. 716), la Legislatura Insular, en la Ley núm. 47 de 1935 ((2) pág. 531), según ha sido enmendada, y en la Ley de Tierras, fué más allá de los remedios prescritos en la acción ordinaria de *quo warranto.* En verdad, si no lo hubiera hecho, la posición de la demandada, en el caso de *Rubert Hermanos, Inc.,* hubiera sido quizás correcta. La demandada en aquel caso sostenía que una vez que se hubiera dictado sentencia disolviendo la corporación, nada más podía hacer esta corte dentro del procedimiento. Aunque la Corte de Circuito de Apelaciones difirió del criterio de esta corte en cuanto a la necesidad, en ese estado del procedi-

miento, de (*a*) el nombramiento de un síndico (*receiver*), y (*b*) el control y manejo por el síndico de *toda* la propiedad *mueble* e inmueble de la corporación demandada, dicha corte estuvo de acuerdo con nosotros en que la opción antes mencionada era válida, y estaba en vigor aún después de la sentencia decretando la disolución de la corporación (118 F. (2d) 752, 58). Y la decisión de la Corte Suprema de los Estados Unidos revocando a la Corte de Circuito de Apelaciones y confirmando el nombramiento de un síndico hecho por esta corte en dicho caso, estaba predicada en la premisa de que la opción era válida y estaba en vigor aún después de disolverse la corporación culpable. *Rubert Hermanos, Inc.* v. *People of Puerto Rico,* 315 U. S. 637. *Cf. Pueblo* v. *Central Cambalache,* 59 D.P.R. 60, 75, 76.

No sería propio que en este estado del procedimiento considerásemos la validez de la Ley de Tierras o que explorásemos su significado preciso. Igualmente, no creemos necesario determinar en este momento el efecto de anteriores estatutos federales e insulares sobre los demandados y sus transacciones. Pero si, como alega el querellante, resolviésemos finalmente que por razón de su dominio sobre algunas tierras, y arrendamientos de otras a los arrendadores demandados, los peticionarios son dueños y tienen el control de tierras en violación de la ley, el efecto de la aplicación de la Ley núm. 47, según ha sido enmendada, y de la Ley de Tierras afectaría incuestionablemente, en virtud de las opciones ya mencionadas, los intereses de los arrendadores demandados, haciéndoles partes indispensables en este caso de acuerdo con las autoridades mencionadas.

Consideramos innecesario, para llegar a esta conclusión, determinar si las opciones mencionadas afectarían los derechos de propiedad de los arrendadores, o sólo los arrendamientos. Pero asumiendo, sin decidirlo, que sólo los arrendamientos fuesen afectados, éstos estarían sujetos—si el querellante prevalece en este caso—a dichas opciones al

precio "razonable" o "justo", que podría ser diferente del canon fijado en los arrendamientos.

Además, como señaló la Corte de Circuito de Apelaciones en la segunda apelación del caso de *Rubert Hermanos, Inc.*, (118 F. (2d) 752, 59), las opciones quizá sólo se refieran a tenencias de tierras en exceso de 500 acres. La cuestión de si el dominio *o* el arrendamiento de no más de 500 acres de tierra se permitiría finalmente en un caso específico, es uno de los muchos problemas que esta corte estaría llamada a considerar. Como cuestión de hecho, como ya hemos apuntado, la Corte Suprema de Estados Unidos aprobó la acción de esta corte al ordenar al síndico en el caso de *Rubert Hermanos, Inc.*, hacerse cargo de toda la propiedad, incluyendo la de naturaleza mueble, al decir en 315 U. S. 637, a la página 648, que "Es suficiente decir que todo el mundo concurre en que las propiedades constituyen una unidad de trabajo, en el cultivo, corte y molienda de caña. Separar la tierra de la maquinaria y de otras propiedades muebles, en espera de que el Pueblo eligiera entre varios procedimientos alternativos, hubiera sido un desperdicio económico inexcusable. Era completamente propio de parte de la Corte Suprema reconocer estas realidades y permitir al síndico que mantuviera la entidad como un negocio activo mientras se llevaba a cabo una liquidación final."

En resumen, como para nuestro fin inmediato el dominio y el control por medio de arrendamiento están sustancialmente en igualdad de condiciones, el afirmar que existe una controversia separable que afecta los arrendamientos y los arrendadores en ellos es similar a la contención, que nadie hace, de que existe una controversia separable que envuelve cada una de las parcelas de terreno propiedad de los peticionarios. Según lo expresó el Juez de Circuito Sr. Hutchison en *Lake* v. *Texas News Co.*, 51 F. (2d) 864 (Corte de Distrito, Tejas, 1931) a la página 863, en este caso está envuelta "una controversia contra los dos; no dos controversias, una contra cada uno".

El que este caso no prospere por no haberse incluído como demandados a arrendadores adicionales y el que dicho defecto, de existir, sea subsanable incluyéndolos después, son cuestiones que no están ante nos en este momento.

Al resolver, como hemos hecho, que los arrendadores de las tierras son partes indispensables en este caso y que no existe controversia separable alguna que envuelva a los peticionarios, no podemos ver cómo la omisión del querellante de incluir los arrendadores de las tierras en el primer procedimiento radicado contra los peticionarios y en otros procedimientos de *quo warranto,* exige que resolvamos como cuestión de derecho que tales arrendadores fueron incluídos en este caso fraudulentamente con el fin de evitar el traslado.

En el caso de *Chicago B. & Q. Ry. Co.* v. *Willard,* 220 U. S. 413, el demandante en una acción por daños radicada ante una corte estatal incluyó como partes demandadas al arrendador junto con el arrendatario de una compañía ferroviaria. Se concedió una petición de traslado a la corte federal. La Corte de Circuito de Apelaciones resolvió que la corte federal no tenía jurisdicción. Esta sentencia fué confirmada en apelación, resolviendo la Corte Suprema que bajo el estatuto local aplicable existía una causa de acción conjunta contra ambas compañías ferroviarias, la arrendadora y la arrendataria. La corte dispuso de la contención en cuanto a la inclusión fraudulenta a la página 427, como sigue:

"...no se puede afirmar que el demandante fraudulenta e impropiamente incluyó como codemandada a la corporación de Illinois junto a la corporación de Iowa, cuando tal acusación es rechazada, como cuestión de ley, por el hecho de que el demandante tenía derecho, como hemos visto, bajo las leyes de Illinois, donde se originó la acción y dentro del cual se encuentra la vía en cuestión, a radicar una acción conjunta contra las compañías de Illinois y Iowa. *Ill. Central RR. Co.* v. *Sheegog,* 215 U. S. 308, 316. Pudo haber preferido que se juzgara su caso ante la corte estatal, de la misma manera que la corporación de Iowa prefirió la corte federal. Pero estas preferencias o motivos, ni fraudulentos ni ilógicos, no tuvieron importancia alguna. Eran inmateriales al determinarse si el deman-

dante tenía un derecho legal a radicar una acción conjunta contra las compañías arrendadora y arrendataria y en esa forma llevarla a su terminación.''

Al mismo efecto, véanse: *Ill.* v. *Sheegog, supra,* a la página 318; *Chicago* v. *Dowell, supra,* a la página 114; *Norwalk* v. *Air-Way Electric Appliance Corp.,* 87 F. (2d) 317 (C.C.A. 2, 1937); *Culp* v. *Baldwin,* 87 F. (2d) 679 (C.C.A. 8, 1937); *Hoffman* v. *Metz,* 31 F. Supp. 204 (1940).

*Se dictará una resolución declarando sin lugar la petición para que se traslade la querella a la Corte de Distrito de los Estados Unidos para Puerto Rico.*